IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| United States of America ex rel. | ) | |
| ALFONSO SWANIGAN, | ) | |
| Petitioner, | ) | |
| | ) | 12 C 8139 |
| v. | ) | |
| | ) | Hon. Virginia M. Kendall |
| MICHAEL LEMKE, Warden, | ) | |
| Stateville Correctional Center, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner Alfonso Swanigan brings this petition for a writ of habeas corpus pursuant to

28 U.S.C. § 2254. He is incarcerated at Stateville Correctional Center in Joliet, Illinois. He was

convicted of first degree murder under 720 ILCS § 5/9-1 and is currently serving a seventy-five-

year sentence. For the following reasons, Swanigan's petition is denied.

## BACKGROUND

Swanigan was charged with first degree murder on March 15, 2002 for the shooting death

of Quintin Huntington.[1] A dispute between Swanigan and Huntington's girlfriend, Keisha

Harper, arose because Harper owed Swanigan $40 but refused to pay him. Swanigan and Harper

argued over the debt several days before the shooting, during which time Swanigan broke

Harper's phone and told her to get the money from her boyfriend. The conflict escalated during

the days leading to the shooting as Swanigan and Harper exchanged threats, and Swanigan

became concerned that Huntington might look to defend his girlfriend in some way. On the

---

[1] The facts cited herein were established by the State court and are presumed true unless rebutted by the petitioner
by clear and convincing evidence. 28 U.S.C. § 2254; *Virsnieks v. Smith*, 521 F.3d 707, 713 (7th Cir. 2008).

night of the shooting, Swanigan was standing on a street corner with some friends and noticed Huntington drive by two times. Swanigan became nervous, armed himself, and approached Huntington's car. When Swanigan saw Huntington reach down for something, he assumed it was a gun, and subsequently shot Huntington in the head, neck, and forearm, killing him.

The trial judge found Swanigan guilty on March 10, 2006. Swanigan directly appealed on March 28, 2008, arguing that the trial court erred in failing to appoint counsel to represent him in his *pro se* post-trial ineffective assistance of counsel motion, and also that the mittimus incorrectly reflected the time he had served while awaiting his sentence. Swanigan's ineffective assistance of counsel claims were based on his trial counsel's failure to call alibi witnesses and impeach a State's witness. On December 12, 2008, the appellate court denied Swanigan's claim that he was entitled to counsel for his post-conviction ineffective assistance of counsel motion and granted his claim that the mittimus was incorrect, adjusting the days served from 1,004 days to 1,375 days.

Swanigan filed a petition for rehearing on December 30, 2008, which was denied on February 19, 2009. On March 20, 2009, Swanigan filed a petition for leave to appeal ("PLA") with the Illinois Supreme Court, which was denied on May 11, 2009. In both cases, his argument was that the trial court erred in failing to appoint counsel to represent him in his post-conviction claim of ineffective assistance of his trial counsel.

On November 10, 2009, Swanigan filed a *pro se* postconviction petition in the Cook County Circuit Court raising three claims: (1) the trial court abused its discretion when it denied petitioner's motion to quash arrest and suppress evidence; (2) he received ineffective assistance of trial counsel because counsel waived his strongest defense—the length of his detention by the police and psychological coercion—during preparation and presentation of the motion to

2

suppress statement; and (3) his Fourth and Fourteenth Amendment Constitutional rights were violated when the police failed to obtain a statement from him within six hours of his arrest and failed to take him before a magistrate in a timely manner. The circuit court summarily dismissed the petition on February 8, 2010.

On February 23, 2010, Swanigan appealed the dismissal, and a State Appellate Defender was appointed on March 5, 2010. The State Appellate Defender subsequently moved to withdraw as appointed counsel on March 18, 2011 because appealing the claims would be "without arguable merit." After reviewing the State Appellate Defender's motion to withdraw and Swanigan's *pro se* reply, the appellate court granted the motion to withdraw and affirmed the circuit court's dismissal on December 23, 2011. Swanigan filed a PLA with the Illinois Supreme Court on February 23, 2012, arguing that the trial court's dismissal of his postconviction claim on the grounds of waiver and res judicata was in error. The PLA was denied on July 5, 2012 and the present habeas corpus petition was filed on October 10, 2012.

Swanigan presents four claims in his petition for a writ of habeas corpus:

1. His Sixth Amendment right to counsel was violated because his trial counsel was ineffective for failing to call alibi witnesses and impeach a State's witness;

2. The trial court violated Swanigan's Fourth and Fourteenth Amendment rights by denying his motion to quash arrest and suppress evidence;

3. His Sixth Amendment right to counsel was violated when his trial counsel ineffectively litigated Swanigan's motion to quash arrest and suppress evidence because he waived factors and failed to object to the State's failure to call all material witnesses;

4. The trial court erred in dismissing Swanigan's postconviction petition on waiver and res judicata grounds.

## DISCUSSION

## I.    Claim One: Ineffective Assistance of Counsel at Trial

Swanigan's first claim is that his Sixth Amendment right to counsel was violated because his trial counsel was ineffective.  He argues that his trial counsel should have called two additional witnesses and properly cross-examined one of the State's witnesses to elicit testimony that Huntington did have a gun and that he was looking for Swanigan.  He argued this claim on direct appeal in the context of his related argument that he was entitled to representation when he argued *pro se* that his trial counsel was ineffective.  The Illinois appellate court rejected Swanigan's argument that his trial counsel was ineffective on the merits and denied his appeal.

A habeas petitioner raising a claim of ineffective assistance of counsel that was previously decided on the merits in state court (1) must satisfy the test for ineffective assistance mandated by *Strickland v. Washington*, 466 U.S. 668 (1984), and (2) the state court's decisions must fail 28 U.S.C. § 2254(d)'s deferential standard of review.  *See Harrington v. Richter*, ⎯⎯ U.S. ⎯⎯, ⎯⎯, 131 S.Ct. 770, 788 (2011); *Pole v. Randolph*, 570 F.3d 922 (7th Cir. 2009).  Thus, a federal habeas court is "doubly deferential" when reviewing a state court's judgment on an ineffective assistance of counsel claim.  *See Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009); *Harrington*, 131 S.Ct. at 788.  The *Strickland* standard demands that the petitioner prove both that his counsel's performance was objectively unreasonable and that he suffered prejudice as a result.  *See Smith v. Robbins*, 528 U.S. 259, 289 (2000) (petitioner "must satisfy both prongs of the *Strickland* test in order to prevail on his claim of ineffective assistance of appellate counsel").

In addition, Section 2254(d)'s deferential standard of review forbids granting habeas relief on a claim adjudicated on the merits in state court unless the state court's decision was contrary to, or involved an unreasonable application of, clearly established United States

Supreme Court precedent, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d). A state court's application of federal law is unreasonable only if it strays "well outside the boundaries of permissible differences of opinion." *Woods v. McBride*, 430 F.3d 813, 816–17 (7th Cir. 2005) (quoting *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002)). A decision is contrary to federal law if it incorrectly expresses controlling Supreme Court precedent or, "having identified the correct rule of law, decide[s] a case differently than a materially factually indistinguishable Supreme Court case." *Conner v. McBride*, 375 F.3d 643, 649 (7th Cir. 2004). Accordingly, this Court will not grant habeas corpus relief on a claim adjudicated on the merits by a state court if there is any possibility that fair-minded jurists could disagree whether the state court's decision conflicts with Supreme Court precedent. *See Harrington*, 131 S.Ct. at 786.

To evaluate the merits of whether Swanigan's trial counsel was ineffective, the Court begins its analysis with Swanigan's trial strategy. Rather than arguing innocence, Swanigan's defense at trial was that his shooting and killing Huntington was second degree murder, not first degree as the State alleged. In Illinois, first degree murder is:

> A person who kills an individual without lawful justification . . . if, in performing the acts which cause the death: (1) he either intends to kill or do great bodily harm to that individual or another, or knows that such acts will cause death to that individual or another; or (2) he knows that such acts create a strong probability of death or great bodily harm to that individual or another . . . .

720 ILCS § 5/9-1. First degree murder is punishable by a period of between twenty and sixty years in prison. 730 ILCS § 5/5-4.5-20. Second degree murder is when a person:

> [C]ommits the offense of first degree murder as defined in paragraph (1) or (2) of subsection (a) of Section 9-1 of this Code and either of the following mitigating factors are present:

> (1) at the time of the killing he or she is acting under a sudden and intense passion resulting from serious provocation by the individual killed or another whom the offender endeavors to kill, but he or she negligently or accidentally causes the death of the individual killed; or
>
> (2) at the time of the killing he or she believes the circumstances to be such that, if they existed, would justify or exonerate the killing under the principles stated in Article 7 of this Code, but his or her belief is unreasonable.

720 ILCS § 5/9-2(a). If either of these mitigating factors is present, the burden shifts to the defendant to "prove either factor by a preponderance of the evidence." 720 ILCS § 5/9-2(c). Second degree murder is a Class 1 felony punishable by between four and twenty years in prison. 730 ILCS 5/5-4.5-30(a). Swanigan's incentive for successfully persuading the trier of fact that he is guilty of second degree murder instead of first degree murder is obvious—the maximum sentence of twenty years for second degree murder is the minimum sentence for first degree murder. Illinois courts have noted that, "the creation of second degree murder was an act of legislative grace in that the legislature recognized that some circumstances under which the crime of first degree murder might be committed warrant lesser penalties than others." *People v. Walls*, 859 N.E.2d 1059, 1062 (Ill. App. Ct. 2006).

Swanigan puts forth three pieces of evidence he feels would have changed the trial court's decision had they been properly argued at trial, and that trial counsel's failure to do so amounts to ineffective assistance of counsel. First, his counsel should have called Marcus McKinley to testify that Huntington was looking for Swanigan on the day of the shooting. The second and third items pertain to whether Huntington had a gun with him in his car when he was shot. Swanigan urges that Julian Gadberry should have been called to testify that there was a gun in Huntington's car when he was shot. (In fact, Swanigan's trial counsel did not call any

witnesses during the defense portion of the trial.) Swanigan also insists Quentin Burns, also know as "Skeeter," should have been impeached during trial for denying that he saw someone take a gun from Huntington's car after previously stating that he did.

Defense counsel addressed these issues in his closing argument. Regarding the evidence McKinley would introduce, trial counsel argued at length that Swanigan was afraid and that he had the unreasonable belief his life was in danger. First, he argued that Vincent Lynch, also known as "Jake," testified that both he and Swanigan were afraid when they saw Huntington's green Audi:

> Vincent Lynch told you that when he saw [Huntington's] green Audi going around, he was afraid. He was so afraid, Judge, he went and got a gun. They say to you that it's absolutely absurd that anybody who is afraid would go get a gun; but, that's what Vincent Lynch did.

(Dkt. 15-16 p. 251.) He then recited Lynch's trial testimony verbatim:

> QUESTION: On the second time [Huntington's green Audi] came around, he left?
> [Meaning, Alfonso.][2]
> LYNCH: Right.
> QUESTION: And, he was concerned?
> LYNCH: Yeah, for his life.
> QUESTION: He was concerned for his life?
> ANSWER: Yes.
> QUESTION: And, you were, too? That's why you got your gun?
> ANSWER: Yes.

(Dkt. 15-16 p. 251.) Trial counsel also recounted the testimony of Jake [Vincent Lynch] and Skeeter [Quentin Burns]:

> Jake told you what happened. That he saw that car going around. Alfonso was afraid. He was afraid. They got a gun. And, Alfonso went up and shot him in fear.

---

[2] Brackets in original.

Then, Judge, we have Skeeter. Skeeter tells us the same thing. That the State's Attorney's theory is wrong. Skeeter tells us that Keisha threatened him. That she's going to send somebody to fuck him up.

And, Skeeter tells you that when Jake that when Alfonso talked to him about it long before he got to the police, long before he made a videotape statement, long before he had one of his four attorneys, that he said to Skeeter, "I was afraid of that guy. I didn't know what he was going to do. I went up to talk to him. He moved. He was startled, and I shot him. And, I did what I had to do."

He said that to Skeeter before he was arrested. And, that's the fundamental point of this case, Judge. [Swanigan] thinks he's right. [Swanigan]'s wrong. He shot a guy and he shouldn't of. That's why I am not asking for self-defense.

Because, if he was right, it would be justifiable. But, he was wrong. But, he thought he was right. That's the definition of second-degree murder. He thought he was doing what he had to do.

(Dkt. 15-16 pp. 252–53.) Based on this evidence, trial counsel urged the judge to find Swanigan

guilty of second degree murder instead of first degree murder:

That's a law. That if the Defense shows you by a preponderance of the evidence that one of these mitigating factors occurs, you have no choice but to find second degree. Is there a preponderance of the evidence? Is it more likely than not that my client was in fear due to the stupid war going on with Keisha? Yes.

\* \* \*

Judge, I'm not asking you to let my client go. I'm not asking you to find my client not guilty. I'm asking you to make the correct call on what these set of facts show; and, they don't show an execution.

You don't walk up to somebody you are about to execute and say "Hey, homie." You don't give him notice that you are coming. [Huntington] was shot from ten feet away into that car. [Swanigan] did what he thought he had to do; and, he was wrong. And, it's second degree [murder].

(Dkt. 15-16 p. 255, 257.)   Trial counsel emphatically argued that Swanigan was afraid of Huntington.  An additional witness adding similar testimony would have added little, if anything, to Swanigan's defense.

Swanigan also argues that his trial counsel was also ineffective because he did not introduce evidence that Huntington had a gun with him when he was shot.  In his closing argument, trial counsel argues:

> We know according to Mr. Smith, that Quentin had a gun.  The State said there was no evidence of a gun.  Mr. Smith told us that Quentin Huntington had a gun.  We don't know where it is.  The important thing in this case, Judge . . . is the difference between objective and subjective.  If I could show you objectively that there was a gun in that car and Quentin was hunting Alfonso and Alfonso acted in self-defense, this would be a self-defense case, if it was objectively true.  But, it wasn't.  It was subjectively true in the mind of Alfonso, and that has been shown to you by their witnesses.

(Dkt. 15-16 pp. 246–47.)  Swanigan's trial counsel clearly considered two defenses for the first degree murder charges against Swanigan: self-defense and second degree murder.  Under Illinois law, self-defense is when a person "is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another, or the commission of a forcible felony."  720 ILCS § 5/7-1.  To succeed on this defense, counsel would have needed to show "(1) that unlawful force was threatened against [Swanigan]; (2) that the person threatened [Swanigan] was not the aggressor; (3) that the danger of harm was imminent; (4) that the use of force was necessary; (5) that the person threatened [Swanigan] actually and subjectively believed a danger existed that required the use of the force applied; and (6) the beliefs of the person

threatened [Swanigan] were objectively reasonable." *People v. Lee*, 821 N.E.2d 307, 311 (Ill. 2004).

In *Lee*, the defendant was convicted of second degree murder and appealed, arguing that the State failed to prove beyond a reasonable doubt that he did not act in self-defense. *Id.* at 310. The facts in *Lee* are instructive. Defendant went to a party with some friends, bringing a gun for protection but leaving it in the car when they went into the party. *Id.* at 309. Later, two men, Wile and Willis, known for carrying guns, arrived at the party, one of whom had shot at the defendant on a previous occasion. *Id.* The defendant subsequently retrieved his gun from the car and put it in his waistband. *Id.* The defendant and his friends soon decided to leave the party and argued with Wile and Willis in the street. *Id.* Willis appeared to reach into his pocket for a gun, so the defendant quickly pulled his own gun from his waistband and shot him. *Id.* The defendant also thought Wile was reaching for a gun in his coat and shot him three times. *Id.* The defendant and his friends fled, and no weapons were found at the scene of the crime. *Id.* The Illinois Supreme Court held that the facts were sufficient to convict the defendant of second degree murder but not self-defense because: (1) there was evidence that Willis acted as though he had a gun; (2) Wile and Willis were known to carry guns; (3) no witnesses saw Wile or Willis with a gun that night; (4) Wile and Willis did not make threats to anyone that night; (5) police did not recover a gun from Willis or Wile from the scene of the shootings. *Id.* at 311. In essence, *Lee* is saying that self-defense requires the person to see the gun pointed at them, ready to fire.

For Swanigan, he did not see a gun and it was not ready to fire; there was no gun on Huntington's person. This precludes a self-defense argument. Instead, Swanigan's case is similar to the facts in *Lee*, with several key differences. Unlike the defendant in *Lee*, Swanigan

and Huntington barely knew each other and had no violent altercations in the past; they were not actively engaged in conversation when the shooting occurred, although Swanigan argues he tried to get Huntington's attention; and Huntington was behind the wheel of his car and therefore could not act as if he had a gun. The heightened aggressiveness of Willis and Wile in *Lee* led the court to find the defendant was acting under the unreasonable belief that his life was in danger; the lack of interaction by Swanigan and Huntington before the shooting, including the lack of a direct threat from Huntington, led the trial court to conclude that Swanigan was the aggressor. The trial judge noted:

> [Swanigan testified at trial that,] I was like, man, all this week, this week been a bad week for me, I'm tired of getting into it with peoples. I'm just gonna start f'g peoples up if they keep bothering me.
>
> State's Attorney asked what do you mean by that, what does f'g peoples up. [Swanigan replied,] Fucking, fucking peoples up, if they're bothering me. I [the judge] think that's a telling statement. In any event once the shooting takes place, the defendant flees, and makes plans to get small. He doesn't stay and tell the police that he thought the victim had a gun, he does not stay and tell the police, man, I'm sorry, I made a mistake, I was afraid of the guy.
>
> He flees. He doesn't only flee, he dumps the gun. He makes good his escape and he tries to hide to the best of his ability.

(Dkt. 15-16 at p. 399.) The trial judge believed Swanigan was the aggressor. Even with evidence that Huntington had a gun in the car, the court would have likely maintained that belief. Because the defense of second degree murder is unavailable to an aggressor under Illinois law, Swanigan was convicted of first degree murder. *People v. Salgado*, 678 N.E.2d 648, 658 (Ill. App. Ct. 1997) ("Instruction on the alternative form of second-degree murder, i.e., unreasonable belief in justification, is not warranted, however, where defendant is the aggressor and the

defendant's use of force is exerted while defendant is attempting to commit, committing, or escaping after committing a forcible felony.").

Although trial counsel's defense strategy of second degree murder was unsuccessful, the similarities between Swanigan's case and the facts in *Lee* show that trial counsel carefully considered his trial strategy—a strategy Swanigan does not challenge. The mere fact that Swanigan's trial strategy was unsuccessful does not establish incompetence. *See People v. Potthast*, 579 N.E.2d 1027, 1032 (Ill. App. Ct. 1991) ("[A] defendant is entitled to competent not perfect representation, and the fact that a tactic was unsuccessful does not establish incompetence."). The Illinois appellate court came to the same conclusion, and after correctly applying the ineffective assistance of counsel standard in *Strickland v. Washington*, 466 U.S. 668 (1984), found that Swanigan's trial counsel was not ineffective. This was a reasonable application of federal law, and the Court therefore denies Swanigan habeas corpus relief on this claim.

## II.  Claim Two: Trial Court Erred in Denying Motions to Quash Arrest

Swanigan alleges that Fourth Amendment rights were denied when the trial court denied his motion to quash arrest and suppress evidence[3] because the police lacked probable cause when they arrested him. Specifically, he claims the confidential informant's information that led to his arrest was unreliable and uncorroborated.

"[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal

---

[3] Swanigan's second claim states that he is challenging the trial court's ruling on his motion to "quash arrest and suppress evidence." Because the rest of the claim, its supporting facts, and the argument proffered in response to the State's brief focus on the events surrounding Swanigan's arrest, the Court finds that he is only challenging the trial court's decision regarding the motion to quash his arrest, and not the separately filed and argued motion to suppress evidence (involuntary confession). The Court therefore makes no finding regarding the trial court's denial of Swanigan's motion to suppress evidence.

habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 482 (1976). The opportunity for 'full and fair litigation "guarantees only the right to present one's case," *Watson v. Hulick*, 481 F.3d 537, 542 (7th Cir. 2007), but "does not guarantee a correct result." *Cabrera v. Hinsley*, 324 F.3d 527, 532 (7th Cir. 2003). Thus, "[a]bsent a subversion of the hearing process, [this Court] will not examine whether the [state court] judge got the decision right." *Cabrera*, 324 F.3d at 531. The Court's role, then, is "to assure ourselves that the state court heard the claim, looked to the right body of case law, and rendered an intellectually honest decision." *Monroe v. Davis*, 712 F.3d 1106, 1114 (7th Cir. 2013).

Swanigan's hired counsel first presented the motion to quash arrest and suppress at a hearing on September 20, 2004. The trial court heard testimony from both Swanigan and the detective who arrested him. Swanigan's attorney had a chance to cross-examine and re-cross-examine the State's witness. After hearing both arguments, the court denied Swanigan's motion to quash arrest. The judge ruled as follows:

> You have someone who tells the police he's an eye witness to the crime and that he saw the defendant shoot the victim. In addition to that, you have an ongoing dispute that we heard about that provides a motive and we also with another witness coming forward testifying with regard to an threat that was made by the defendant to the victim.
>
> I think there is probable cause to arrest the defendant. Payton versus New York [*Payton v. New York*, 445 U.S. 573, 576 (1980)] prohibits warrantless non-consensual entries into the home to make an arrest. The only evidence before this Court is that the police had a telephone conversation with the mother of the defendant, indicated they were coming by. Mom knew they were coming by, mom told the defendant they were coming by, mom let them in the house. That is not a non-consensual entry under Payton versus New York.

The only evidence before me is that the police were allowed into
the residence and therefore I don't think there is a Payton violation.

(Dkt. 15-15 at pp. 193–94.)  Swanigan did not raise his objection to the trial court's denial of his

motion to quash his arrest on direct appeal.  His appointed counsel declined to argue it because

she deemed it meritless, but she told him he could file it on his own.  He did not, thereby

forfeiting the right to do so again.  *People v. Pitsonbarger*, 793 N.E.2d 609, 619 (Ill. 2002).

Swanigan subsequently filed a postconviction petition in which he again raised the issue

of the trial court's failure to quash his arrest.  The circuit court denied the petition, and Swanigan

filed a notice of appeal.  A State Appellate Defender ("SAD") was appointed to represent

Swanigan on appeal, but filed a detailed motion to withdraw as appointed counsel on the grounds

that Swanigan's claims lacked merit and could not be non-frivolously argued.  The SAD

dutifully marched through the possible ways she could gain traction with Swanigan's claim that

his Fourth Amendment rights were violated when the trial court denied his motion to quash his

arrest.

The SAD noted, first, that the claim was defaulted because Swanigan failed to raise it in

his direct appeal.  Next, she considered whether counsel on direct appeal was ineffective for

failing to bring the claim.  Citing *People v. Easley*, 736 N.E.2d 975, 553 (Ill. 2000), she

concluded that appellate counsel's action was not "objectively unreasonable" and did not

"prejudice[] the defendant."  This is because appellate counsel's choice not to proceed with a

claim due to lack of merit is not incompetent unless it is "patently wrong."  *See id.*  To determine

whether appellate counsel was patently wrong, the SAD engaged in a substantive review of

whether the police had probable cause to arrest Swanigan at his home.  Her analysis starts with

the definition of probable cause outlined by *Illinois v. Sims*, 736 N.E.2d 1048, 1060 (Ill. 2000),

which cited to *Beck v. Ohio*, 379 U.S. 89, 91 (1964) and [*Illinois*] *v. Kidd*, 675 N.E.2d 910, 921 (Ill. 1996) as governing precedent. She recited the testimony given at the hearing, concluding that the appellate court would likely find the trial court's decision to believe the State's witness was not against the manifest weight of the evidence, and that there was no error in the court's finding that probable cause existed. In so concluding, she cites *People v. Pitman*, 813 N.E.2d 93, 101 (Ill. 2004), which in turn cites *Ornelas v. United States*, 517 U.S. 690 (1996).

Finally, the SAD considered whether a violation of *Payton v. New York*, 445 U.S. 573, 586 (1980) could be raised on appeal because warrantless searches and arrests in the home require exigent circumstances in addition to probable cause. She concluded that it could not because "even an arrest made during a warrantless nonconsensual entry of a home does not vitiate a defendant's subsequent custody . . . so long as the authorities had probable cause to arrest the suspect." This conclusion quotes *People v. Segoviano*, 725 N.E.2d 1275, 1283 (Ill. 2000), which cites *New York v. Harris*, 495 U.S. 14, 18–21 (1990).

Swanigan replied to the SAD's motion to withdraw and argued that she, "engaged in a perfunctory examination of the record on appeal and informed Appellant of her conclusion and intent to file a motion to withdraw [and] Counsel did not discuss the case with Appellant, and such failure has resulted in a pure misinterpretation of Appellant's claims and reason for asserting direct appeal counsel's failure to raise his post-conviction petition claims 1 and 2." The appellate court held, "We have carefully reviewed the record in this case, the [SAD's] memorandum, and defendant's response. *We find the SAD is correct; there are no issues of arguable merit*, in this appeal. We allow counsel's motion; we affirm the judgment of the circuit court of Cook County summarily dismissing defendant's petition." (Dkt. 15-8 at p. 2 (emphasis

added).)  Swanigan filed a thorough PLA with the Illinois Supreme Court that was denied on July 5, 2012.

There is ample evidence that the Illinois courts fully and fairly adjudicated Swanigan's claim that the trial court violated his Fourth Amendment rights by failing to quash his arrest. First, the trial court made its decision based on a hearing at which Swanigan's counsel was able to present evidence.  Second, the trial court and subsequent appellate courts relied on the correct federal and state law, and applied it correctly.  In fact, the probable cause standard applied by the SAD citing to *Beck* and *Kidd* is the very same precedent the court held sufficient in *Monroe*.  712 F.3d at 1116.  Finally, the courts reviewing the issue took the claim seriously, holding a hearing on it and carefully considering the SAD's rigorous analysis in her motion to withdraw.  Because the Illinois courts fully and fairly adjudicated the claim, the Court holds that it is non-cognizable under federal habeas corpus relief.

### III.  Claim Three: Ineffective Assistance of Counsel in Pre-Trial Litigation Regarding Motion to Suppress

Swanigan argues that his Sixth Amendment right to counsel was violated when his attorney waived "crucial factors" such as "lengthy detention, psychological ploy, age, intimidation, intelligence, education, and experience."  Counsel was also allegedly ineffective because he did not object to the State's failure to call all material witnesses or call them himself at the hearing on Swanigan's pre-trial motion to suppress statements.  However, Swanigan did not raise this claim on direct appeal, which the State argues is forfeiture under Illinois law: "Issues that could have been presented on direct appeal, but were not, are waived."  *People v. Towns*, 696 N.E.2d 1128, 1134 (Ill. 1998).

A federal court will not reach the merits of a habeas claim where: (1) the claim was presented to the state courts and their ruling against the petitioner rested on an adequate and independent state procedural ground; or (2) the claim was not presented to the state courts but it is clear that those courts would not hold the claim procedurally barred. *See Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004). Thus, "[a] federal court entertaining a petition for a writ of habeas corpus will not review a question of federal law if it determines that the state decision rests on a state procedural ground that is independent of the federal question and adequate to support the judgment." *Page v. Frank*, 343 F.3d 901, 905 (7th Cir. 2003). A procedural default does not preclude a federal court from considering a habeas claim if the petitioner demonstrates either cause for the default and prejudice resulting from it or that a miscarriage of justice will result if the claim is not considered on the merits. *Id.* However, procedural default only precludes habeas review where the last state court rendering judgment on the claim 'clearly and expressly' stated that it rested its judgment on procedural default. *Harris v. Reed*, 489 U.S. 255, 262–63 (1989).

The State persuasively argues that *Woods v. Schwartz*, 589 F.3d 368 (7th Cir. 2009) is analogous. In *Woods*, petitioner was convicted of murder and sentenced to forty years in prison. *Id.* at 371. Petitioner directly appealed his sentence, but not the underlying conviction. *Id.* When his direct appeal was denied, he filed three subsequent postconviction petitions in Illinois state court. *Id.* at 371–72. The third petition gave rise to the court's analysis in *Woods*. Therein, petitioner argues that his trial counsel was ineffective for failing to challenge an eyewitness's alleged view of the crime, and that his appellate counsel was ineffective for raising only a forfeited issue on appeal. *Id.* at 373. The trial court denied the claims and the appellate court granted his appointed counsel's motion to withdraw. *Id.* at 372. Neither the trial court nor the

appellate court discussed federal law. *Id.* The Illinois Supreme Court denied petitioner's PLA, and petitioner filed a petition for habeas corpus. *Id.* The district court barred all but one of petitioner's seventeen claims as procedurally defaulted and denied petitioner a certificate of appealability. *Id.* On appeal, the Seventh Circuit granted a certificate of appealability on three issues, two of which being petitioner's claims of ineffective assistance of trial and appellate counsel. *Id.* at 372–73.

In *Woods*, petitioner argued that his ineffective assistance of counsel claims were not procedurally defaulted because the state court decided them on their federal law merits. *Id.* at 373. To resolve the issue, the court looked to the nature of the disposition and its surrounding circumstances, including a review of the record and, therefore, consideration of the motion to withdraw filed by petitioner's appellate counsel. *Id.* The dismissals issued by the state court did not indicate whether the court decided the issues on state or federal grounds, but when "read in conjunction with all of the surrounding circumstances . . . [they] indicate that the resolution of [petitioner's] third post-conviction petition neither rested primarily on federal law nor was it interwoven with federal law." *Id.* at 376. This is because forfeiture on state law grounds was the "sole ground cited by [petitioner's] appellate counsel in the motion to withdraw" and nothing else in the record indicates any other way the petitioner could have escaped the procedural bar to reach federal law merits. *Id.* Therefore, the court could not rule on the merits of the petitioner's claims. *Id.* at 376–77.

Swanigan's record is similarly devoid of evidence that the state court reached the merits of his argument that his trial counsel ineffectively litigated his pre-trial motions. He first raised this claim on postconviction appeal, and the trial court summarily dismissed it because it was a "matter[] of the record and could have been raised on direct appeal." As discussed above,

Swanigan petitioned for postconviction relief, his petition was denied, and he appealed. He was appointed appellate counsel, who moved to withdraw for several reasons, chief among them that this claim "could have been raised on direct appeal because the allegations were based on matters appearing on the record. Because it was not raised on direct appeal, the issue is forfeited." The appellate court granted the motion and denied Swanigan's appeal without expressly stating whether it was based on state forfeiture law or the federal merits, instead finding that "the SAD is correct" and that there were "no issues of arguable merit" in Swanigan's appeal. The Illinois Supreme Court denied Swanigan's PLA without explanation. Unlike *Woods* where the court found the petitioner's claims were decided on state law forfeiture grounds and not the merits based on the complete absence of indicia in the state court's rulings, here we have the Circuit Court of Cook County expressly stating its decision is based on state law forfeiture grounds. Swanigan's appellate counsel reinforces this conclusion by arguing in the first instance that state law waiver bars the claim, only analyzing the merits of his claim in the alternative. The Court therefore finds that this claim is procedurally barred.

Even if it were not barred, the claim would fail on its merits. Swanigan argues that his trial counsel was ineffective because his performance at the pre-trial hearing "waived [his] strongest defense during the suppression hearing." According to Swanigan, his strongest defense was the thirty-eight hour detention he was subjected to before his videotaped confession. This, when viewed in light of the fact that Swanigan was twenty years old, had not finished high school, had a drug case pending, was questioned by veteran detectives, and was allegedly choked, show that his confession was not voluntary and should be suppressed pursuant to *People v. Ballard*, 794 N.E.2d 788, 806 (Ill. 2002). In *Ballard*, the Illinois Supreme Court held that, "The question of the competency of a confession is for the trial court alone to decide by a

preponderance of the evidence, and its determination will not be disturbed on review unless it is against the manifest weight of the evidence." *Id.* at 806. In applying this standard, the court found that a "36 hour delay" did not make a confession involuntary when "defendant willingly cooperated with police from the beginning of his interview; defendant's cooperation extended throughout his prearraignment detention; and the length of the interrogation was not unreasonable." *Id.* at 807.

Here, the trial court had a full hearing on suppressing Swanigan's confession that covered the strong defenses Swanigan alleges were waived. The suppression motion itself contains many of these allegations: (1) it lists the time Swanigan was arrested and the time his confession was videotaped, albeit without expressly saying "delay" or "38 hours;" (2) Swanigan was choked; (3) Swanigan was not permitted to speak to an attorney; and (4) police made "false promised" to get Swanigan to confess. The trial court then had a hearing on these issues, during which Swanigan's counsel was able to question Detective Gilger—the detective who arrested and subsequently interrogated Swanigan—about the arrest and interrogation.

Swanigan argues that his counsel should have done a better job arguing these issues, and specifically that he waived Swanigan's defense by failing to overcome objections by the prosecutor regarding questions about the amount of time Swanigan was detained before his confession. While questioning Detective Gilger during the hearing, the State objected to defense counsel's questions about delay, arguing that delay was not mentioned in the motion to suppress and should not be argued at the hearing because the State was unable to prepare for it as a result. Swanigan's counsel replied: "Judge, I am not arguing delay. I am simply trying to understand exactly the course of events that lead my client on March 16th to completely deny any knowledge to 27 hours later suddenly saying yes, I shot someone." (Dkt. 15-15 at p. 224.)

Rather than proving ineffectiveness, trial counsel's response demonstrates an understanding that Illinois law considers the totality of the circumstances in determining whether a confession was voluntary, not just one factor. *People v. Willis*, 831 N.E.2d 531, 542 (Ill. 2005) ("To determine whether the defendant's confession was voluntary, we consider the totality of the circumstances surrounding it, including the defendant's age, intelligence, education, experience, and physical condition at the time of the detention and interrogation; the duration of the interrogation; the presence of *Miranda* warnings; the presence of any physical or mental abuse; and the legality and duration of the detention.").

Swanigan argues in the alternative that he was forcibly prevented from arguing this claim on direct appeal and therefore did not waive or forfeit it under Illinois state law. He insists that his appellate counsel would not make these arguments on his behalf, and that as a result, the State would not accept his *pro se* filings. First, Swanigan could not have appellate representation and simultaneously file *pro se* motions. *See, e.g.*, *In re Sean N.*, 911 N.E.2d 1094, 1095 (Ill. App. Ct. 2009) ("[A] defendant possesses no right to some sort of hybrid representation, whereby he would receive the services of counsel and still be permitted to file pro se motions. Accordingly, when a defendant is represented by counsel, he generally has no authority to file pro se motions, and the court should not consider them." (citations omitted)).

Second, a claim that his appellate counsel failed to file meritorious motions amounts to an allegation of ineffective assistance of counsel. In applying the *Strickland* factors to appellate counsel, the Illinois Supreme Court has held that, "Appellate counsel is not obligated to brief every conceivable issue on appeal, and it is not incompetence of counsel to refrain from raising issues which, in his or her judgment, are without merit, unless counsel's appraisal of the merits is patently wrong. Accordingly, unless the underlying issues are meritorious, defendant has

suffered no prejudice from counsel's failure to raise them on appeal." *People v. Easley*, 736 N.E.2d 975, 553 (Ill. 2000). As discussed above, Swanigan's pre-trial litigation was not ineffective. As such, it was not incompetence on the part of Swanigan's appellate counsel to refrain from raising the issues on appeal.

## IV. Claim Four: Trial Court Erred in Denying Postconviction Petitions Due to Waiver and Res Judicata

Finally, Swanigan argues that the trial court erred in dismissing his postconviction petition on waiver and res judicata grounds. Section 2254 limits federal courts to decide whether a conviction violated the Constitution, laws, or treaties of the United States when a petitioner brings a motion for a writ of habeas corpus pursuant to the statute. *See* 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). Because a federal habeas corpus petition must raise questions or issues related to the application of federal law, claims based on state law are not cognizable on habeas review. *See Estelle*, 502 U.S. at 68; *Lechner v. Frank*, 341 F.3d 635, 642 (7th Cir. 2003); *Verdin v. O'Leary*, 972 F.2d 1467, 1476 (7th Cir. 1992). A State's failure to comply with its postconviction procedures generally does not give rise to a cognizable habeas claim. *Resendez v. Smith*, 692 F.3d 623, 628 (7th Cir. 2012) (citing *Montgomery v. Meloy*, 90 F.3d 1200, 1206 (7th Cir.1996) ("[e]rrors in state collateral review cannot form the basis for federal habeas corpus relief.")).

Illinois law allows a person to challenge their conviction by asserting a "substantial denial of his or her rights under the Constitution of the United States or of the State of Illinois or both." 725 ILCS § 5/122-1. A post-conviction petition is a collateral attack on a prior conviction, *People v. Simms*, 192 Ill. 2d 348, 359 (2000), and is limited to constitutional issues that were not and could not have been raised on direct appeal. *People v. King*, 192 lll. 2d 189,

192–93 (2000).   Illinois statutes govern the contents of the petition, 725 ILCS § 5/122-2, docketing and dismissal, 725 ILCS § 5/122-2.1, waiver, 725 ILCS § 5/122-3, the timing of the proceedings, 725 ILCS § 5/122-5, permits disposition by trial courts, 725 ILCS § 5/122-6, and permits appellate review by appellate courts and the Illinois Supreme Court. 725 ILCS § 5/122-7. Because Illinois law governs Illinois postconviction rights and procedures, this Court cannot review violations of those rights and procedures on a habeas petition.

## V.        Certificate of Appealability

Unless the Court issues a certificate of appealability, an appeal may not be taken to the court of appeals from the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a state court.  28 U.S.C. § 2253(c)(1)(A).  "Only if the applicant has made a substantial showing of the denial of a constitutional right" can the Court issue the certificate.  28 U.S.C. § 2253(c)(2).  This Court dismisses Swanigan's petition in part on procedural grounds, and in part on merit.  When a court dismisses a petition on procedural grounds, a certificate of appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that reasonable jurists would find it debatable whether the district court was correct in its procedural ruling."  *Slack v. McDaniel,* 529 U.S. 473, 485 (2000).  "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further."  *Id.* at 484.  Here, it is indisputable that Claims 2 and 4 are non-cognizable under habeas corpus review and that Claim 3 is procedurally defaulted.  When a court dismisses on merit, obtaining a certificate of appealability requires Holmes to demonstrate that reasonable jurists would find this Court's assessment of the

constitutional claims either debatable or wrong. *See Miller–El v. Cockrell*, 537 U.S. 322, 338 (2003) (quoting *Slack*, 529 U.S. at 484). Swanigan has not made such a showing here, and the Court concludes that reasonable jurists could not find room to debate its ruling on the constitutional merits of Swanigan's ineffective assistance of counsel claim. Therefore, no reasonable jurist could conclude that the Court has erred in dismissing the petition. Accordingly, the Court denies Holmes a certificate of appealability.

## CONCLUSION

For the reasons set forth above, the Court denies Holmes's Petition for Writ of Habeas Corpus and a certificate of appealability.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: November 7, 2013